# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 00 Cr 76 -1 | Date | Sept. 7, 2001 |
| Case Title | USA  V  Mohammed Alrub | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]

(2) ☐ Brief in support of motion due _____

(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____

(4) ☐ ☐Ruling/☐Hearing on _____ set for _____ at _____

(5) ☐ Status hearing ☐held ☐continued to ☐set for ☐re-set for _____ at _____

(6) ☐ Pretrial conf. ☐held ☐continued to ☐set for ☐re-set for _____ at _____

(7) ☐ Trial ☐Set for ☐re-set for _____ at _____

(8) ☐ ☐Bench Trial ☐Jury Trial ☐Hearing held and continued to _____ at _____

(9) ☐ This case is dismissed ☐without ☐with prejudice and without costs ☐by agreement ☐pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☑ [Other docket entry] Memorandum opinion and order entered. Accordingly, the court concludes that defendant's negotiations for the purchase of cocaine with the CI and the agents beginning 1/13/00 constituted the beginning of the 1/28/00 attempted transaction.

(11) ☑ [For further detail see ☐ order on the reverse of ☑ order attached to the original minute order form.]

| | | | |
|---|---|---|---|
| ☐ No notices required, advised in open court | | | number of notices |
| ☐ No notices required. | | | |
| ☑ Notices mailed by judge's staff. | | SEP 0 7 2001 | date docketed |
| ☐ Notified counsel by telephone. | 01 SEP -7 AM 10: 27 | | |
| ☐ Docketing to mail notices. | | | docketing dpty. initials |
| ☐ Mail AO 450 form. | | | date mailed notice |
| ☐ Copy to judge/magistrate Judge. | | | |
| courtroom deputy's Initials | Date/time received in central Clerk's Office | | mailing dpty. initials |

Document # 14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>) No. 00 CR 76<br>v. ).<br>) Judge Robert W. Gettleman<br>MOHAMED ALRUB, )<br>)<br>Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

When does an offense "commence?" The answer in this case could mean the difference between a mandatory sentence of ten years and a potential departure to as few as four or five years. Analysis of the question poses arcane issues that only the U.S. Sentencing Guidelines are capable of creating.

Defendant Mohamed Alrub has entered a "blind" plea of guilty (i.e., without a written plea agreement) to Count 2 of a two count indictment, the first count of which charged a conspiracy to distribute at least five kilograms of cocaine with Alrub's two co-defendants, beginning January 25, 2000, and ending with their arrest on January 28, 2000. Count 2 charges defendant with attempting to possess with intent to distribute approximately five kilograms of cocaine on January 28, 2000.

During the plea colloquy, the government agreed to dismiss Count I at sentencing, and both defendant and the government acknowledged that defendant would be able to argue for any permissible downward departure. Defendant has subsequently done so on a number of grounds, including various theories of sentencing entrapment, family circumstances and his status as a

deportable alien. At the time of the plea, both parties and the court believed that defendant was eligible for the "safety valve" provision of U.S.S.G. § 5C1.2, allowing a downward departure and avoiding the mandatory ten year minimum sentence that would otherwise have applied under 18 U.S.C. § 846.[1]

In the original Presentence Investigation Report ("PSR"), the probation officer concluded that defendant met the safety valve requirements, specifically finding that defendant did not have more than one criminal history point. This determination hinged on the probation officer's mistaken conclusion that defendant's prior state court conviction and sentence of probation for theft, when defendant was 18 years old, occurred on December 16, 1994, more than five years prior to the "commencement" of the instant offense. Under § 4A1.2(d)(2)(B), a criminal history point is added for such a prior offense only if the sentence was "imposed within five years of the defendant's commencement of the instant offense."

During the pendency of the proceedings on defendant's motion for a downward departure, the probation officer and the attorneys learned that in fact the sentence for the theft conviction was entered on January 23, 1995, rather than December 16, 1994. Defendant does not contest this fact. Upon learning of the correct date of the prior conviction and sentence, the government objected to the original PSR and argued that defendant's criminal history level is II rather than I,

---

[1] Section 5C1.2 requires a defendant to meet five criteria to be eligible for the safety valve, the first of which is that defendant does not have more than one criminal history point. The other four criteria (which the parties agree defendant meets) involve the lack of violence, injury to any person, or leadership in the offensive conduct, and the necessity for the defendant to provide complete and truthful information to the government prior to sentencing. In addition, under § 2D1.1(b)(6), if a defendant meets the safety valve requirements and the offense level is 26 or above (as in the instant case), he is entitled to a two level reduction from the offense level that would otherwise apply.

2

making him ineligible for the safety valve or any departure and requiring a ten year mandatory minimum sentence. Specifically, the government contends that the instant offense "commenced" as early as January 13, 2000 (ten days before the five year period from the theft conviction), when defendant began negotiating with a cooperating informant ("CI") and undercover agents from the U.S. Drug Enforcement Administration ("DEA").[2]

Defendant counters by arguing that:

1. Conduct constituting "commencement of the instant offense" for purposes of § 4A1.2(d)(2)(B) must itself be an "offense" as defined for purposes of determining "relevant conduct" under § 1.B1.3;

2. Everything defendant did prior to January 23, 2000, was solely to conspire with government agents, and thus cannot be considered criminal conduct (i.e., an "offense");[3] and

3. The instant offense did not "commence" until January 25, 2000 (two days after the five year period from the theft conviction and sentence expired), when defendant began to conspire with persons who were not government agents - - exactly as charged in Count 1 of the indictment - - resulting in a criminal history category of I.

The question to be decided, therefore, is whether the instant offense "commenced" prior to January 23, 2000, as the government contends, or after that date, as defendant contends. The answer thus depends on whether conduct occurring before January 23, 2000, must itself constitute a criminal "offense," as defendant contends, or whether such conduct could be non-criminal, as the government contends.

---

[2] On January 13, 2000, defendant agreed with the confidential government informant and undercover government agents to buy five to ten kilograms of cocaine for a price of $15,000 per kilogram. These negotiations continued through the date of arrest, January 28, 2000.

[3] It is well settled that one cannot criminally conspire with a government agent or informant. United States v. Mahkimetas, 991 F.2d 375, 383 (7th Cir. 1993).

3

The relevant provisions of Application Note 8[4] to U.S.S.G. 4A1.2 reads:

<u>Applicable Time Period</u>. Section 4A1.2(d)(2) and (e) establishes the time period within which prior sentences are counted. As used in § 4A1.2(d)(2) and (e), the term "commencement of the instant offense" includes any relevant conduct. See § 1B1.3 (Relevant Conduct).

Thus, defendant argues that conduct that "commences" the instant offense is defined as any "relevant conduct" as defined by § 1B1.3. The government points out that subparagraph (a)(2) of that guideline defines "relevant conduct" as all acts and omissions . . . that were part of the same course of conduct or common scheme or plans as the offense of conviction." Application Note 9(B) of that guideline further provides that to be part of the same course of conduct, the acts need only to be "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." The government continues by citing a number of Seventh Circuit cases that hold generally that relevant conduct may include negotiations and other criminal activity for which the defendant was not charged. See, e.g., United States v. Matthews, 116 F.3d 305 (7th Cir. 1997), United States v. Bonnilla-Comacho, 121 F.3d 287 (7th Cir. 1997).

The problem with the government's argument is that the cases it cites and the application notes to § 1B1.3 are all couched in terms of "offenses" as constituting relevant conduct.[5] Thus,

---

[4] Commentary in the Sentencing Guidelines Manual is generally binding on the courts unless it is inconsistent with the Constitution, federal statutory law or is plainly erroneous. Stinson v. United States, 5008 U.S. 36, 38, 113 S. Ct. 1913 (1993).

[5] Indeed, in United States v. Gabel, 85 F.3d 1217 (7th Cir. 1996), on which the government heavily relies, the court defined the issue being decided as "whether the burglaries and thefts to which [defendant] admitted in his plea agreement were 'relevant conduct' for purposes of the structuring and money laundering offenses." Id. at 1222. Neither Gabel nor any of the cases relied on by the government found that non-criminal conduct could be "relevant" under § 1B1.3.

4

the very application note relied upon by the government, Application Note 9, reads in pertinent part:

> (A) <u>Common Scheme or Plan</u>. For two or more *offenses* to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor . . ..
>
> (B) <u>Same Course of Conduct</u>. *Offenses* that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses . . .. [emphasis added.]

Although the instant case appears to present an issue of first impression in this circuit, the Sixth Circuit in <u>United States v. Shafer</u>, 199 F.3d 826, 830 (6th Cir. 1999), held that conduct regarded as relevant under § 1B1.3(a)(2) cannot be conduct that "could never lead to a criminal conviction because the conduct is not of a criminal nature." <u>Id</u>. at 830. Noting the distinction between such non-criminal conduct and criminal conduct that was not prosecuted for "technical reasons" such as the expiration of a statute of limitations, the court held (<u>Id</u>.):

> Indeed, we believe the Sentencing Guidelines simply do not provide for the consideration of conduct under § 1B1.3(a)(2) unless that conduct involves an offense that could lead to a criminal conviction resulting in prison time. Accordingly, we now explicitly hold that a district court may not include conduct in its sentencing calculation pursuant to § 1B1.3(a)(2) unless the conduct at issue amounts to an offense for which a criminal defendant could possibly be incarcerated.

The court agrees with the Sixth Circuit's analysis. Because it is uncontested that the only purported "relevant conduct" in which defendant engaged before January 23, 2000, was negotiating with the government agents for the purchase of the drugs that eventually led to the January 28, 2000, reverse sting, and because such conduct "could never lead to a criminal conviction" because one cannot criminally conspire with a government agent, the activities prior to January 23, 2000, cannot be considered "relevant conduct" under § 1B1.3.

5

Unfortunately, the court's analysis of this issue does not get defendant where he wants to go, because the court concludes that Application Note 8 to § 4A1.2 includes more than relevant conduct under § 1B1.3. As discussed previously, the Application Note provides that "the term 'commencement of the instant offense' <u>includes</u> any relevant conduct. See § 1.B1.3 (Relevant Conduct)." (Emphasis added). Although at first glance this language, as defendant argues, seems to limit conduct "commencing" the instant offense to criminal conduct covered as "relevant" under § 1B1.3, the case law has generally held that the word "includes," as used in statutes and other legal writings, "is frequently, if not generally used as a word of extension or enlargement rather than one of limitation or enumeration." <u>FTC v. MTK Marketing, Inc.</u>, 149 F.3d 1036, 1040 (9th Cir. 1998) (quoting <u>In re: Yuchum</u>, 89 F.3d 661, 668 (9th Cir. 1996).

Indeed, Application Note 2 to the Sentencing Guideline § 1B1.1 ("Application Instructions") provides that "[t]he term 'includes' is not exhaustive." Referring to this Application Note, the Fifth Circuit noted in <u>United States v. Canada</u>, 110 F.3d 260, 2 63 (5th Cir. 1997), that the word "includes" in § 2G2.2 "is inclusive, and not exclusive . . .." A similar conclusion is required in the context of Chapter 4 of the Sentencing Guidelines, including § 4A1.2(d)(2)(D), which enhances the sentences imposed on offenders with prior convictions. "As explained in the Guidelines Commentary 'repeated criminal behavior . . . aggravate[s] the need for punishment with each recurrence' because a recidivist is both more a threat to society and less likely to be successfully rehabilitated. U.S.S.G. Ch. 4, Pt. A, Intro. Comment." <u>United States v. Compton</u>, 82 F.3d 179, 185, n.13 (7th Cir. 1996).

Thus, the intent of the language in Application Note 8 § 4A1.2 appears to include criminal conduct ("relevant" under § 1B1.3) that might not otherwise be considered as conduct

6

"commencing" the instant offense. For example, as discussed in Application Note 9 to § 1B1.3, a temporally remote act of securities fraud involving common victims, accomplices, purpose or modus operandi might be considered as relevant conduct under § 1B1.3, but not the "commencement" of the instant offense, and thus would not be included absent the inclusion specified in Application Note 8 to § 4A1.2. Likewise, non-criminal conduct undertaken as the initial[6] part of the planning or preparation for the instant offense (e.g., the lawful purchase of a get-away car for later use in a bank robbery) would constitute conduct "commencing" that offense.

The court concludes that defendant's negotiations for the purchase of cocaine with the CI and the government agents beginning January 13, 2000, constituted the initiation - - the beginning - - of the January 28, 2000, attempted transaction to which defendant pled guilty, and thus would ordinarily constitute the "commencement" of that offense under § 4A1.2(d)(2)(B). As the parties agree, commencement of the offense prior to January 23, 2000, is within five years of defendant's prior conviction on January 23, 1995, and must be counted as a criminal history point under § 4A1.2(d)(2)(B), resulting in a criminal history level of II and making defendant ineligible for the safety valve provided by § 5C1.2.

The parties are directed to address the consequences of this holding at the hearing set for September 11, 2001, at 10:00 a.m. In particular, the parties should address whether the court may consider defendant's entrapment-related arguments as they concern the pre-January 25,

---

[6]The dictionary definition of "commence" is "to initiate . . . to begin." Webster's Third New International Dictionary, Unabridged (1993).

7

2000, conduct in determining whether such conduct constitutes commencement of the instant offense.

**ENTER:** **September 5, 2001**

_Robert W. Gettleman_ (signature)
**Robert W. Gettleman**
**United States District Judge**